Good morning. My name is Jim Miller for appellant Marilyn Hayes. May it please the court, thank you for having an oral argument in this Social Security Disability case where you will be exercising de novo review. If you don't mind, I'd like to bring your attention to the issue of fatigue. I think that issue crosses and overlaps with the other issues in this case and also is a thread. The ALJ here, as well as the district court, regarded fatigue as an exertional impairment, meaning it affects strength and ability to do physical tasks. That was a basic mistake. That's what happened. How do you get there? Because what the district court did, or what the ALJ did, I thought, was to basically look at her physician's observation and say, well, you know, that's just not helpful. And so you don't have that kind of non-exertional limitation. I think fatigue is almost by definition a non-exertional impairment. In other words, it affects the ability to do everything, whatever the amount of whatever the physical requirements might be, because the fatigue affects the ability to engage in all the physical requirements. Is the fatigue emotional or is it physical? in which she testified that she had to lay down during a large part of each day and told her doctors that and filled out forms to that effect also, should be accredited as fatigue that caused non-exertional impairments, inability to engage in any activities, regardless of the exertion involved. So really the issue is whether they should have called a vocational expert rather than just rely on the grids? Is that the question? I think it does come down that way because when there is such a non-exertional impairment, the use of the usual rules to decide the case are not permitted. It's not permitted. That use of the rule is not permitted. Well, coming back to where we started, the ALJ wasn't required to include fatigue as a non-exertional limitation unless her fatigue significantly limited the work that she could do. Right? Well, I think her testimony went that direction. Well, I know, but am I right in how I articulated it? You just disagree with the assumption. That fatigue was only affected her strength? I'm saying that the ALJ had no obligation to include fatigue as a non-exertional limitation unless her fatigue significantly limited the kind of work that she could do. That's true. That's true. Yes. All right. So the question then becomes whether there is support in the record for the limitations that the ALJ actually imposed, that is, that she could do sedentary work. Right? Well, I would pose that a little differently, whether there's support in the record for the ALJ's disregard of the non-exertional limitations she alleged and a doctor talked about. The doctor said she had to rest for two or three, I think, hours, or it could be two or three times a day. I don't know which it is. And I don't either. I don't know that symbol that was used. Well, the record doesn't show it. Then it could be just two or three times a day you've got to rest. Right? So if that's true, why does that preclude you from working? Well, if because Doing sedentary work. Well, because presumably it was not just a minute or two each time that she had to rest. Well, but you're presuming. I mean, the point is what does the record show with respect to her inability to do sedentary work? The doctor's opinion on that was less than clear, but her testimony was not less than clear. She definitely testified many times and wrote many times about exactly how it affected her in needing to lay down, in inability to complete tasks, in having to interrupt tasks, and in not being able to do even the majority of household tasks that she might have otherwise had to do. Unless there are other questions, I'll reserve my four-and-a-half minutes. Mr. Cusker. Good morning. My name is John Cusker, and I represent Michael J. Astrew, Commissioner of Social Security. Let me return to the question of fatigue for a moment. I believe that fatigue is more correctly viewed as a symptom and not necessarily as an impairment, and that's the way that the administrative law goes. A symptom rather than a what? Fatigue should be viewed as a symptom and not as a non-exertional or as an exertional impairment. This symptom could cause impairment, but the ALJ found that it did not cause any impairment beyond a limitation to sedentary work. The administrative law judge's finding was based on the opinion of Dr. Ben Razavi, who was the consulting examiner and who considered the claimant's fatigue complaints and who opined that the claimant could perform the full range of sedentary work. Because the claimant could perform the full range of sedentary work, the administrative law judge properly applied the medical vocational rules, and he was not required to take testimony from a vocational expert in order to meet the commissioner's burden at the fifth step of the sequential evaluation. What the ALJ said was that the record wasn't adequate because there was no indication on what part of the day she would have to lie down, which seems like kind of an odd. That was one of the ALJ's reasons for rejecting Dr. Watkins, I think. Yeah, right. Watson's opinion. But it is true. Dr. Watson doesn't specify if the claimant needs to lie down during what we'd consider part of the work day or whether this is an evening or nighttime requirement. It wasn't the ALJ's sole rationale for rejecting Dr. Watson's opinion. I believe that, more importantly, Dr. Watson's treating notes, which are relatively scanty, don't support the limitations Dr. Watson assessed on this questionnaire. Further, the ALJ found that the diagnoses weren't supported by the treating records. Some of the diagnoses included history of mental impairment and alcoholism and, in fact, were contradicted by the claimant's own statements, particularly with regard to the history of alcoholism. And then, finally, that the former opinion, which did not indicate that it was meant to be viewed retrospectively, was actually, that is, the questionnaire was issued after the ALJ had found that the claimant was disabled. And for that reason, the district court found that the ALJ had adequately addressed Dr. Watson's opinion. Well, that letter was written just, what, two weeks after she reached age 50? And it was very retrospective. It was about what had happened previously. There's retrospective elements to it, but it's not clear. How retrospective, as far as I can tell? Well, in terms of speaking of the claimant's history. Yes. But, again, the treating notes don't support the opinion that the claimant wasn't able to perform sedentary work. It was contradicted by Dr. Ben-Razavi's opinion. The ALJ had to weigh these two opinions against each other, stated legally sufficient reasons for rejecting Dr. Watson's opinion, and we would submit that the ALJ's findings should be affirmed. What we're talking about are, what, 16 months of benefits? Is that what we're talking about? That's the difference between the time of the SSI application and the claimant's 50th birthday. That's correct. Yes. I believe I've said what I wanted to say about fatigue. I'd want to go on and address the claimant's burden at the fifth step of the sequential evaluation. Appellant argues that because there was a Step 5 decision, that the Commissioner's burden at the fifth step is merely to show that the claimant can perform jobs that exist in significant numbers of the national economy. The Commissioner is not required to prove that the claimant does or does not have particular impairments. It is the claimant's burden, according to the regulations, to show that, and, indeed, to produce relevant medical evidence establishing that an impairment exists. And we would submit that particularly with regard to the allegation of mental impairment, that that burden was not met. Further, we would argue that, and have argued, that despite Dr. Watson's statement on the questionnaire that the claimant had a history of depression, the ALJ correctly found that there was no medically determined mental impairment present during the period of issue in this case. There was no diagnosis, there was no evidence of treatment, there was no documentation of any symptoms. The claimant's testimony did not allege mental impairment. The claimant's attorney did not argue that she had a mental impairment while the case was being decided administratively. The only evidence of depression that was contained in the record was a consulting examiner's report and a State Agency doctor's assessment, which were both related to the prior SSI claim, which was not before the ALJ. Let me ask you, just for my own education, what's the difference in the standard pre-50 and post-50? Are you asking the difference between the competing medical vocational rules, the grid rules? Yes, because apparently you don't have to show as much when you reach age 50 as what you do for pre-50. Age is considered an adverse vocational factor as age increases. So that a person who is younger than age 50 is considered a younger individual and is not so adversely affected. A person over age 50 is considered closely approaching advanced age. And that's why the other factors incorporated into the grid rules, for example, education and previous work experience and acquired skills, may be the same. But the adversity of advancing age might lead to, and in this case did lead to a fully favorable decision for the claimant from her 50th birthday onward. Does that answer your question? Well, it just seems like a little odd quirk of the law that all of a sudden one day before 50 you're not disabled and the day after you are. Well, the Russell case addresses that in the sense that lines have to be drawn somewhere. The way that these grids were created, age is a vocational factor that has to be considered and the line is drawn at the claimant's age. Counselor, let me warn you that some of us on this bench are over 50. Does that include you? That does include me. Do you feel over the hill? Yes? I would be classified as a person of advanced age under the Commissioner's regulations. To wrap that up, lines do have to be drawn at some point. In this case, there were no other increasingly adverse factors of the type that are set forth in the Halleck's rule that was cited by the district court. And I believe that the district court correctly held that the administrative law judge correctly applied line drawing, in this case, at age 50 and was not required to find an alternative date for disability. One other point to be made. Again, with respect to the alleged mental impairment, the appellant has cited the Nguyen case. I would argue that Nguyen is distinguishable because in Nguyen, there was abundant evidence in the record, apparently, that the claimant had some type of mental impairment. But that is clearly distinguishable in this case where, again, there was no current evidence, no symptoms, no allegations, no testimony to that effect. I believe that's all. We would ask the Court to affirm the district court and the Commissioner's final decision. Thank you. If there's anything I can clear up on those issues, I'll just mention Mr. Cusker's point that fatigue as a symptom is correct. And it is not an impairment, it's a symptom, but the idea that it didn't affect or it was not a non-exertional impairment, was contrary to all the evidence, the symptom testimony and the doctor's evidence about this. The doctor that the government relied upon, that the ALJ relied upon, that Mr. Cusker relies upon, Dr. Ben Ravazzi, also misconceived fatigue as an exertional impairment and, like the ALJ and the district court judge, found that fatigue lent or limited her to a sedentary exertion, whereas as a non-exertional impairment, fatigue would affect even the ability to sit up and work for eight hours. I think all of these mistakes were consistent throughout and need to be corrected. The government, Mr. Cusker also argues that the government had no burden to show a lack of mental impairment. That, again, is true, yet the medical evidence, light as it was, about a mental impairment, was uncontradicted from two sides of the aisle, providing reasoning where the evidence is uncontradicted that a burden of explaining away or the duty to explain away is higher, if not impossible, to meet. There's no evidence on which to rely. There were no doctor reports of no mental impairment at all. The idea about whether the impairment should have been treated if it was existent, we have the Ninth Circuit's word on this. It's a matter of common knowledge, pretty much taking judicial notice, that mental impairments often go untreated. That's in the wind, the case that Mr. Cusker criticized. That's all I have for now.
judges: Fletcher, Rymer, Duffy